**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

CASE NO.:<u>1:23-cv-2859</u>

JOHN DOE A, JOHN DOE B, and
JOHN DOE C, individually, and on
behalf of all others similarly situated,

         Plaintiff,

vs.

CAROL SPAHN, in her official
capacity as Administrator of the
Peace Corps,

         Defendant.

**CLASS ACTION COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

**Plaintiffs, by and through their attorneys, allege as follows:**

I.     **PRELIMINARY STATEMENT**

1.     This class action lawsuit—brought on behalf of applicants to the Peace Corps' Volunteer program and a proposed class—seeks to remedy the Peace Corps' systemic discrimination against accepted applicants for volunteer service with disabilities, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) *et seq.* ("Rehabilitation Act"), which prohibits discrimination on the basis of disability in programs or activities receiving federal funds or conducted by an Executive Agency.

2.     Plaintiffs John Doe A, John Doe B, and John Doe C (collectively, "Plaintiffs"), on their own behalf and on behalf of the proposed Class identified below, are qualified individuals with perceived, actual, or records of disabilities whose commitment to public service motivated their applications to the Peace Corps. Contrary to the evidence provided and without offering reasonable accommodations, the Peace Corps improperly denied Plaintiffs medical clearances based on their disabilities, perceived disabilities, and/or record of disabilities.

3.     As detailed in the Factual Allegations below, this lawsuit alleges, among other violations, that the Peace Corps has a policy or practice of discriminating against Invitees[1] on the basis of disability, based on information provided to the Peace Corps about their actual or perceived disabilities or records of disabilities. The Peace Corps fails to conduct individualized assessments based on reasonable judgment that relies on current medical knowledge and on the best available objective evidence, and fails to consider reasonable accommodations for Invitees with disabilities when conducting its medical clearance process. The Peace Corps routinely denies Invitees with disabilities an equal opportunity to participate in and benefit from its Volunteer program, on account of their disabilities, perceived disabilities, or record of disabilities, associated

---

1.   Throughout, the term "Invitee" refers to an individual who was extended an invitation to become a Peace Corps Volunteer and has accepted their invitation to serve, but has not been placed as a Volunteer.

*Does v. Spahn (Peace Corps)* Class Complaint - 2

symptoms, and/or their engagement in treatment for their disabilities, in violation of the Rehabilitation Act.

4.     The Peace Corps utilizes its Volunteer corps to "promote world peace and friendship," meet the basic needs of people living in poverty abroad, and "help promote a better understanding of the American people on the part of the peoples served and a better understanding of other peoples on the part of the American people" and on the part of the Volunteers themselves. 22 U.S.C. § 2501.

5.     By serving abroad, Peace Corps Volunteers carry out the foreign policy goals of the Peace Corps, including "the promotion of a better understanding of other peoples on the part of the American people." 22 U.S.C. § 2517.

6.     Peace Corps Volunteers are provided certain types of compensation, training, leave, healthcare, and retirement credits in exchange for their service. 22 U.S.C. § 2504(a).

7.     The Peace Corps Office of Medical Services ("Medical Office") is responsible for conducting the medical clearance process for all Invitees.

8.     As a regular practice and policy, the Medical Office denies positions abroad to Invitees with disabilities, perceived disabilities, and/or records of disabilities based on their diagnoses, symptoms, and/or treatment, and without legally compliant individualized assessments that take account of objective facts and medical evidence.

9.     As a regular practice and policy, the Medical Office fails to conduct individualized assessments of Invitees with disabilities that accurately assess their capacity to serve in specific posts abroad, but rather, discriminates against them based upon speculation and unwarranted assumptions about their medical conditions, symptoms, and/or treatment, denying them the opportunity to participate in and benefit from the Peace Corps' Volunteer program.

10.     The Peace Corps routinely fails to meet its obligations under the Rehabilitation Act by denying individuals, on account of disability, participation in, and the benefits of, this federally

funded program of an Executive Agency. This lawsuit seeks an end to this systemic discrimination against people with disabilities.

11.     Plaintiffs and class members have no adequate remedy at law and, unless Defendant is preliminarily and permanently enjoined from discriminating against Volunteers with disabilities, perceived disabilities, and records of disabilities, Plaintiffs and class members will continue to suffer irreparable harm as a result of the denial of their rights under the Rehabilitation Act and will be continued to be denied the opportunity to serve in the Peace Corps.

12.     Plaintiffs and class members seek declaratory and injunctive relief as set forth below, including an injunction ordering the Peace Corps to comply with the requirements of Section 504 of the Rehabilitation Act, equitable relief for affected Volunteers, attorneys' fees and costs, and any further relief the Court deems necessary and appropriate.

## II.     PARTIES

### A.  Plaintiffs

13.     Plaintiffs are qualified individuals with disabilities protected under Section 504 of the Rehabilitation Act. 29 U.S.C. § 705 (20)(B). Each named Plaintiff has a disability because they have an impairment that substantially limits one or more major life activities or major bodily functions, have a record of such an impairment, or were regarded by the Peace Corps as having such an impairment. 28 C.F.R. § 41.31;[2] 45 C.F.R. § 84.3(j). Each named Plaintiff is a qualified individual with a disability because they meet the essential eligibility requirements for applying to and serving in the Peace Corps, with or without a reasonable accommodation, 28 C.F.R. § 41.32; 45 C.F.R. § 85.3(l), and indeed, were selected as Volunteers before the Peace Corps subsequently rescinded their opportunities based upon Plaintiffs' disabilities, records of disabilities, and

---

2.   This Department of Justice regulation provides that federal agencies must promulgate regulations under Section 504 of the Rehabilitation Act and sets out the legal standards all federal agencies must comply with in promulgating these regulations. Thus, though the Peace Corps has failed to promulgate its own Section 504 regulations, it is still – as a federal agency – bound by the standards set forth in 28 C.F.R. § 41.

perceived disabilities. Each was required to provide the Peace Corps with confidential medical information before even being offered a Volunteer post.

**John Doe A**

14.     Representative Plaintiff John Doe A is a 23 year-old man. He previously traveled and taught abroad.

15.     He was diagnosed with Major Depressive Disorder when he was twelve, which the Peace Corps required him to disclose.

16.     The Peace Corps formally invited John Doe A to serve as a Peace Corps Volunteer in the Philippines, conditioned on receiving medical clearance.

17.     Despite support from his evaluating mental health professional, who stated that he was capable of serving in the Philippines, the Peace Corps denied John Doe A's medical clearance. The Peace Corps denied his medical clearance on the basis of John Doe A's disability, perceived disability, and/or record of a disability, without making an individualized assessment based on reasonable judgment that relies on current medical knowledge and on the best available objective evidence, and without offering reasonable accommodations.

18.     The Peace Corps' stated reasons for John Doe A's denial were speculative, incomplete, and contrary to his and his mental health evaluator's opinions and assessments.

19.     John Doe A was qualified to perform all essential functions of the Volunteer position with or without reasonable accommodations and did not pose a direct threat to the health or safety of others.

20.     John Doe A resides in LaPort, Indiana, where he resided at the time of his application to the Peace Corps, invitation to serve in the Philippines, medical clearance process, denial of medical clearance, and appeal of denial of medical clearance.

**John Doe B**

21.     Representative Plaintiff John Doe B is a 27 year-old man. He has traveled, taught, and lived abroad.

22.     He was diagnosed with Bipolar Disorder, which the Peace Corps required him to disclose. John Doe B manages his diagnosis with therapy and medication.

23.     The Peace Corps formally invited John Doe B to serve as a Peace Corps Volunteer in Kyrgyzstan, conditioned on receiving medical clearance.

24.     Despite support from his psychiatrist and primary care physician, both of whom stated that he was capable of serving in Kyrgyzstan, the Peace Corps denied John Doe B's medical clearance. The Peace Corps denied his medical clearance on the basis of John Doe B's disability, perceived disability, and/or record of a disability without making an individualized assessment based on reasonable judgment that relies on current medical knowledge and on the best available objective evidence, and without offering reasonable accommodations.

25.     The Peace Corps' stated reasons for John Doe B's denial were speculative, incomplete, and contrary to his and his medical and mental health providers' opinions and assessments.

26.     John Doe B was qualified to perform all essential functions of the Volunteer position with or without reasonable accommodations and did not pose a direct threat to the health or safety of others.

27.     John Doe B resides in Washington, D.C., where he resided at the time of his application to the Peace Corps, invitation to serve in Kyrgyzstan, medical clearance process, denial of medical clearance, and appeal of denial of medical clearance.

**John Doe C**

28.     Representative Plaintiff John Doe C is a 30 year-old man who previously served abroad in the U.S. military.

29.     The Peace Corps formally invited John Doe C to serve as a Peace Corps Volunteer in Madagascar, conditioned on receiving medical clearance.

30.     John Doe C has been diagnosed with Major Depressive Disorder, which the Peace Corps required him to disclose. John Doe C manages his diagnosis with therapy and medication.

31.     Despite unanimous support from the Department of Veterans' Affairs, his therapist, and his psychiatrist, the Peace Corps denied John Doe C medical clearance to serve in Madagascar. The Peace Corps denied his medical clearance on the basis of John Doe C's disability, perceived disability, and/or record of a disability without making an individualized assessment based on reasonable judgment that relies on current medical knowledge and on the best available objective evidence, and without offering reasonable accommodations.

32.     The Peace Corps' stated reasons for John Doe C's denial were speculative, incomplete, and contrary to his, the Department of Veterans' Affairs', and his mental health providers' opinions and assessments.

33.     John Doe C was qualified to perform all essential functions of the Volunteer position with or without reasonable accommodations and did not pose a direct threat to the health or safety of others.

34.     John Doe C resided in Connecticut at the time of his application to the Peace Corps, invitation to serve in Madagascar, medical clearance process, denial of medical clearance, and appeal of denial of medical clearance. He currently resides in Japan.

**Defendant**

35.     The Peace Corps is an independent agency within the executive branch of the United States government. 22 U.S.C. § 2501-1. As an Executive Agency and recipient of federal funding, the Peace Corps is covered by Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) *et. seq.*

36.     Defendant Carol Spahn is the Director of the Peace Corps, responsible for leading the independent agency. She is sued in her official capacity.

## III.   JURISDICTION AND VENUE

37.     This action is brought under the Rehabilitation Act to address the ongoing systemic denial of equal access to Volunteer opportunities to people with disabilities by the Peace Corps. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

38.     Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events giving rise to the claims set forth herein occurred in this district and because the Defendant maintains an office in this district. The Peace Corps is headquartered in Washington, D.C., including its Medical Office and the Behavioral Health and Outreach Unit within the Office of Health Services.

## IV.   CLASS ACTION ALLEGATIONS

39.     Plaintiffs bring this action pursuant to Rules 23(a), (b)(2), and (c)(4) of the Federal Rules of Civil Procedure ("FRCP") on behalf of themselves and the following defined Class: All Peace Corps Invitees who, from September 19, 2022,[3] until the resolution of this complaint,  were denied Peace Corps Volunteer positions by virtue of not being medically cleared due to their disabilities, record of disabilities, or perceived disabilities.

40.     <u>Numerosity</u>:  The Proposed Class is so numerous that joinder of all members is impracticable. The Peace Corps has thousands of Invitees a year, upon information and belief. Because there are thousands of Invitees each year, Plaintiffs believe, and on that basis allege, that during the relevant period, there are at least dozens of individuals who are geographically dispersed around the country and the world who satisfy the definition of the Proposed Class. Moreover, Plaintiffs anticipate that the class will grow over time because the Peace Corps will continue to maintain the challenged pattern, practices, and/or policies, including denying equal access, opportunities, and benefits of the Peace Corps' Volunteer program to Invitees with disabilities,

---

3. Plaintiffs will seek to certify a class commencing with the earliest possible date. This date is 45 days prior to Plaintiff John Doe A's informal EEO exhaustion with the Peace Corps (as in, 45 days prior to November 2, 2022). If it is determined that the class period can extend prior to this date, then Plaintiff incorporates that earlier date here by reference.

perceived disabilities, and records of disabilities; failing to conduct individualized assessments based on reasonable judgment that relies on current medical knowledge and on the best available objective evidence; and/or failing to offer or consider reasonable accommodations before denying positions to Invitees based on disability.[4] .

41.    <u>Commonality</u>:  Common questions of law and fact exist as to all members of the Proposed Class, including but not limited to:

a.   Whether the Peace Corps has a pattern, practice, and/or policy of not conducting legally adequate individualized assessments based on reasonable judgment that relies on current medical knowledge and on the best available objective evidence of Invitees with actual or perceived disabilities or records of disabilities as part of the medical clearance process;

b.   Whether the Peace Corps has a pattern, practice, and/or policy of denying medical clearances to Invitees based on disability;

c.   Whether the Peace Corps has a pattern, practice, and/or policy of denying medical clearances to Invitees with actual or perceived disabilities or records of disabilities based on fears, assumptions, and speculation about their diagnoses, treatment, and/or symptoms;;

d.   Whether the Peace Corps has a pattern, practice, and/or policy of not engaging in a legally adequate interactive process with Invitees with disabilities before denying medical clearances on the basis of disability;

e.   Whether the Peace Corps has a pattern, practice, and/or policy of failing to offer and/or consider reasonable accommodations prior to denying medical clearances based on disability;

f.   Whether the Peace Corps has a pattern, practice, and/or policy of not considering reasonable accommodations available in or near the country or site

at which the Invitee is invited to serve when denying medical clearances based on disability;

g.  Whether the Peace Corps has a pattern, practice, and/or policy of failing to conduct a legally compliant direct threat analysis as to any Invitees with actual or perceived disabilities or records of disabilities before denying medical clearances on that basis;

h.  Whether any or all of the Peace Corps' above-listed patterns, practices, and/or policies resulted in the recission of Invitees' invitations to Volunteer;

i.  Whether any or all of the Peace Corps' above-listed patterns, policies, and/or practices violate Section 504 of the Rehabilitation Act;

j.  The appropriate injunctive relief to provide to Plaintiffs and those similarly situated;

k.  The appropriate injunctive relief to prevent prospective harm to Plaintiffs and those similarly situated; and

l.  The appropriate declaratory relief.

42.  Typicality:  Plaintiffs' claims are typical of the claims of members of the Proposed Class. Plaintiffs were Invitees of the Peace Corps with actual or perceived disabilities or records of disabilities who were denied medical clearances, and thus denied Volunteer positions, on the basis of disability.

43.  Adequacy:  Plaintiffs will fairly and adequately protect the interests of the proposed Class, have no conflicts with the proposed Class's interests, and have retained counsel experienced in complex class litigation, including class disability discrimination litigation against federal agencies.

44.  This case is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because the Peace Corps has acted or refused to act on grounds that apply generally to the proposed Class, including by maintaining a pattern, practice, and/or policy of denying equal

access, opportunities, and benefits of the Peace Corps' Volunteer program to Invitees with actual or perceived disabilities or records of disabilities based on their diagnosis, treatment, or symptoms, failing to conduct individualized assessments based on reasonable judgment that relies on current medical knowledge and on the best available objective evidence, and/or failing to offer or consider reasonable accommodations before denying positions to Invitees based on disability, and because final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

45.     The Court may direct notice to all members of the Proposed Class under Rule 23(b)(2), though it is not required. The names, email addresses, mailing addresses, and telephone numbers of the members of the Proposed Class are available from the Peace Corps because class members are current and former Peace Corps Invitees.

IV.     **FACTUAL ALLEGATIONS**

        ***The Peace Corps Discriminates Against Plaintiffs on the Basis of Disability***

46.     The Peace Corps has discriminated for many years against Invitees with disabilities, perceived disabilities, and/or records of disabilities. On its website, the Peace Corps has encouraged applicants to review an available list of health conditions that it considers difficult to accommodate, including many medical and mental health conditions that it stated were "typically not supported" and others that trigger medical ineligibility.

47.     When a successful applicant becomes an Invitee, the applicant must submit medical documentation for review by the Peace Corps Office of Medical Services. The Medical Office is responsible for conducting the medical clearance process for all Invitees.

48.     Invitees must submit documentation of vaccinations, lab tests, medical evaluations, and dental care. The Medical Office may also require specialist examinations and additional forms based on the Invitee's medical disclosures, including, *e.g.,* for mental health conditions. When the Medical Office requires specialist examinations and forms, Invitees are often required to pay substantial out-of-pocket costs to obtain these services that are not reimbursed.

49.     When the Peace Corps does not medically clear an Invitee, that Invitee can appeal the decision. To appeal, Invitees submit further information. The Peace Corps does not guarantee that the appeal will be decided before the Invitee's previously scheduled departure.

50.     The entire medical clearance process takes place via an online portal, and the Medical Office does not typically converse with Invitees or their medical providers outside of messages on the portal. The Medical Office also does not conduct in-person, independent medical evaluations.

51.     The Peace Corps does not offer, consider, and/or assess, during the medical clearance process, whether reasonable accommodations could and should be provided to the Invitee in or near the country or site where the Invitee has been invited to serve, or whether the Invitee's disability-related needs could be met by serving in a different country or site.

52.     Rather, as a regular pattern, practice, and/or policy, the Peace Corps discriminates against Invitees with disabilities based upon speculation and unwarranted assumptions about their diagnoses, treatment, and/or symptoms, denying them equal opportunities to participate in and benefit from the Peace Corps' Volunteer program.

### *The Peace Corps' Medical Clearance Policies and Practices Led to Discrimination Against Plaintiffs and Class Members*

i.     _John Doe A_

53.     In or about September 2021, Plaintiff John Doe A applied for a Peace Corps Volunteer position.

54.     On or about August 16, 2022, Plaintiff John Doe A received a formal invitation to serve in the Peace Corps as a Volunteer in the Philippines.

55.     The Peace Corps required John Doe A to disclose his mental health disability and past participation in therapy as treatment.

56.     Following his selection, and on or about November 2, 2022, Plaintiff John Doe A submitted personal statements in which he answered a series of questions about his personal health. Plaintiff John Doe A was required to undergo a mental health evaluation as part of the medical

clearance process. The mental health professional who evaluated John Doe A stated that he was stable, well-functioning, and capable of serving in the Philippines.

57.     On or about November 9, 2022, without a legally compliant individualized assessment or consideration of reasonable accommodations, the Medical Office denied his medical clearance, ignoring the advice of the mental health professional who conducted his evaluation. The Medical Office stated he was not cleared for service because of his current diagnosis of Major Depressive Disorder, on and off moderate symptoms of this diagnosis, and other symptoms that have not recurred since high school, which the Peace Corps summarily asserted would have a "high likelihood of exacerbation or relapse in the stressful circumstances of Peace Corps service and would likely result in an undue disruption to your service in order to provide necessary care." This denial did not take into account the mental health evaluator's opinion that John Doe A had gained increased insight into and ability to manage his diagnosis in the past few years and that she has no concerns about his ability to serve in the Philippines  nor did it consider John Doe A's self-evaluation of his capabilities.

58.     In addition to ignoring the advice of John Doe A's mental health evaluator and his own assessment of his capabilities, the Peace Corps' decision failed to consider any reasonable accommodations.

59.     Plaintiff John Doe A replied the same day, on November 9, 2022, via email, requesting an appeal. Plaintiff John Doe A timely filed a written appeal on December 7, 2022, within the 30-day window. Plaintiff John Doe A's appeal included a personal statement addressing his mental health, and a mental health evaluation and treatment summary from his mental health evaluator who indicated that she believed Plaintiff John Doe A had a low risk of symptom recurrence and is a stable, well-functioning individual. In his mental health personal statement, Plaintiff John Doe A indicated that he is able to manage his symptoms of depression without taking medication and has been stable for many years.

60.     The Peace Corps did not engage in any further interactive process with Plaintiff John Doe A or contact his evaluator, who were in the best position to evaluate his ability to serve abroad.

61.     On or about December 21, 2022, the Peace Corps notified Plaintiff John Doe A that his appeal had been denied for the same disability-based reasons as his original denial and that his candidacy for the Peace Corps Volunteer position was being terminated.

62.     Plaintiff John Doe A requested no accommodation from the Peace Corps that would have imposed any burden – let alone an undue burden – on the agency. The Peace Corps did not ask Plaintiff John Doe A about any need for reasonable accommodations or offer any reasonable accommodations to Plaintiff John Doe A prior to denying him the opportunity to serve based on disability.

63.     The Peace Corps' decision was not supported by an individualized assessment based on reasonable judgment that relies on current medical knowledge and on the best available objective evidence, including the resources available at or near the specific location where Plaintiff John Doe A was to serve, or the job duties of Plaintiff John Doe A's offered position.

64.     The Peace Corps did not offer any alternative assignments as an accommodation.

65.     Rather, the Peace Corps improperly denied Plaintiff John Doe A opportunities based upon his disability, record of disability, and/or perceived disability.

66.     Plaintiff John Doe A's experience is illustrative of how the Peace Corps' medical screening process discriminates against people with mental health disabilities, including people with records of disabilities and perceived disabilities.

   *ii.*     *John Doe B*

67.     In or about May 2022, Plaintiff John Doe B applied for a Peace Corps Volunteer position.

68.     On or about October 28, 2022, Plaintiff John Doe B received a formal invitation to serve in the Peace Corps as a Volunteer in Kyrgyzstan.

69.     The Peace Corps required John Doe B to disclose his mental health disability and participation in therapy as treatment.

70.     Following his selection, as a part of the medical clearance process, the Peace Corps asked Plaintiff John Doe B to submit a personal statement in which he answered a series of questions about his personal health.

71.     On or about November 15, 2022, without a legally compliant individualized assessment or consideration of reasonable accommodations, the Peace Corps Medical Office notified Plaintiff John Doe B that his medical clearance was denied. The reason given in his denial was that Plaintiff John Doe B was diagnosed with, and had been treated for, Bipolar Disorder. The Peace Corps also raised concerns about supposed rare side effects of his medication. The Peace Corps summarily and arbitrarily determined that Plaintiff John Doe B's medication could have side effects and that he would need "psychiatric monitoring."

72.     Plaintiff John Doe B replied the same day, on November 15, 2022, via email, requesting an appeal. Plaintiff John Doe B timely filed a written appeal on December 15, 2022, within the 30-day window. Plaintiff John Doe B's appeal included a personal statement and was supplemented by a letter from his psychiatrist on January 12, 2023. These materials confirmed that he was fully stable, that side effects from Plaintiff John Doe B's medication are exceptionally rare, and that Plaintiff John Doe B required no more than one medical visit every six months. Plaintiff John Doe B offered to self-finance travel to the United States to visit his doctor and obtain six months of medication refills, imposing no cost or hardship on the Peace Corps whatsoever. Plaintiff John Doe B further suggested the use of self-financed therapy online – imposing no cost on the Peace Corps – and noted that Kyrgyzstan has sufficient dependable sources of internet for this purpose.

73.     On or about February 8, 2023, the Peace Corps notified Plaintiff John Doe B that his appeal had been denied based on disability and that his candidacy for the Peace Corps Volunteer position was being terminated.

74.     Plaintiff John Doe B requested no accommodation from the Peace Corps that would have imposed any burden – let alone an undue burden – on the agency. The Peace Corps did not ask Plaintiff John Doe B about any need for reasonable accommodations or offer any reasonable accommodations to Plaintiff John B prior to denying him the opportunity to serve based on disability.

75.     The Peace Corps did not engage in any further interactive process with Plaintiff John Doe B or contact his treating providers, who were in the best position to evaluate his ability to serve abroad.

76.     The Peace Corps' decision was not supported by an individualized assessment based on reasonable judgment that relies on current medical knowledge and on the best available objective evidence, including the resources available at or near the specific location where Plaintiff John Doe B was to serve, or the job duties of Plaintiff John Doe B's offered position.

77.     The Peace Corps did not offer any alternative assignments as an accommodation.

78.     Rather, the Peace Corps improperly denied Plaintiff John Doe B opportunities based upon his disability, record of disability, and/or perceived disability.

79.     Plaintiff John Doe B's experience is illustrative of how the Peace Corps' medical screening process discriminates against people with disabilities, including people with records of disabilities and perceived disabilities.

   iii.     _John Doe C_

80.     On or about January 4, 2021, John Doe C applied for a  Peace Corps Volunteer position.

81.     On or about July 12, 2021, Plaintiff John Doe C received a formal invitation to serve in the Peace Corps as a Volunteer in Madagascar.

82.     The Peace Corps required John Doe C to disclose his mental health disability and participation in therapy as treatment.

83.     Following his selection, on or about August 1, 2022, Plaintiff John Doe C obtained and submitted notes from the Department of Veterans Affairs, his therapist, and his psychiatrist, outlining his mental health and medication histories and demonstrating that his medical history and/or condition presented no barrier to his serving in Madagascar, with or without reasonable accommodations.

84.     On or about August 25, 2022, without a legally compliant individualized assessment or consideration of reasonable accommodations, the Medical Office denied his medical clearance, ignoring the advice of his medical providers. The reason given in his denial was that Plaintiff John Doe C had been diagnosed with and was treated for Major Depressive Disorder in July 2020 and experienced severe depressive symptoms most recently in December 2021. The denial also stated that Plaintiff John Doe C's provider recommended that Plaintiff John Doe C continue with therapy to enhance coping skills. The denial ignored medical information Plaintiff John Doe C submitted indicating that he was fully stable and his current coping skills would allow him to serve in Madagascar.

85.     In addition to disregarding the advice of John Doe C's medical providers and his own assessment of his capabilities, the Peace Corps' decision ignored that John Doe C had been successfully managing his health, that his providers supported his Volunteer position in Madagascar, and that he had successfully spent years stationed abroad for the U.S. military in a highly stressful setting.

86.     Plaintiff John Doe C replied the same day he was notified of the denial. On August 25, 2022, he sent an email in response to his non-clearance indicating his intent to appeal the determination and explaining that his mental health condition would not inhibit, at all, his ability to serve in Madagascar, where he was set to move. Among other things, he explained that his mental health provider fully cleared him to go to Madagascar and that he could continue his learned coping mechanisms while in Madagascar at no cost to the Peace Corps.

87.     The Peace Corps did not engage in any further interactive process with Plaintiff John Doe C or contact his treating providers, who were in the best position to evaluate his ability to serve abroad.

88.     Plaintiff John Doe C timely submitted an appeal within days of the denial, well within the 30-day window, including a personal statement describing his ability to serve abroad that reiterated and expanded upon the points made in his August 25, 2022 email. Among other things, he emphasized that, while serving in Madagascar, he would be able to take care of his medical needs to the extent recommended by his treating providers at no cost or inconvenience to the Peace Corps. He also explained that he was excelling at his position as a medical support assistant with the Veterans Affairs Connecticut Health Care Hospital since December 2021, receiving two promotions in nine months.

89.     On about October 5, 2022, the Peace Corps notified Plaintiff John Doe C that his appeal had been denied for the same disability-based reasons as his initial denial and that his candidacy for the Peace Corps Volunteer position was being terminated.

90.     Plaintiff John Doe C requested no accommodation from the Peace Corps that would have imposed any burden – let alone an undue burden – on the agency. The Peace Corps did not ask Plaintiff John Doe C about any need for reasonable accommodations or offer any reasonable accommodations to Plaintiff John Doe C prior to denying him the opportunity to serve based on his disability.

91.     The Peace Corps' decision was not supported by an individualized assessment based on reasonable judgment that relies on current medical knowledge and on the best available objective evidence, including the resources available at or near the specific location where Plaintiff John Doe C was to serve and the job duties of Plaintiff John Doe C's offered position.

92.     The Peace Corps did not offer any alternative assignments as an accommodation.

93.     Rather, the Peace Corps improperly denied Plaintiff John Doe C opportunities based upon his disability, record of disability, and/or perceived disability.

94.     Plaintiff John Doe C's experience is illustrative of how the Peace Corps' medical screening process discriminates against people with disabilities, including people with records of disabilities and perceived disabilities.

***The Peace Corps Discriminated Against Other Invitees in the Same Way as the Named Plaintiffs***

95.     Numerous other Invitees experienced similar discrimination on the basis of their disability, records of disability, and/or perceived disability as the result of the Peace Corps' medical clearance process. Some examples of other Invitees are described below.

i.     *Invitee A*

96.     On or about January 24, 2023, Invitee A was selected for a Peace Corps Volunteer position in Jamaica.

97.     Invitee A has a disability, perceived disability, and/or record of disability, based upon which the Peace Corps wrongfully denied her placement abroad as a Volunteer. Specifically, at all times relevant to this Complaint, Invitee A had diagnoses of Persistent Depressive Disorder, Post-Traumatic Stress Disorder, and Insomnia, for which she was taking prescription medications.

98.     At all times relevant to this Complaint, Invitee A was a qualified individual with a disability under the Rehabilitation Act. Invitee A was qualified for the position for which she had been selected and could have performed all essential functions of the position with or without reasonable accommodations.

99.     Following Invitee A's selection, the Peace Corps required her to answer questions about her mental health. She also submitted multiple letters from treating mental health providers. These letters indicated that Invitee A was capable of serving in the Peace Corps, noting, by way of example, that Invitee A was experiencing no ongoing depressive symptoms and was free of all acute illness.

100.     On or about March 6, 2023, without a legally compliant individualized assessment or consideration of reasonable accommodations, the Peace Corps Medical Office notified Invitee A that her medical clearance was denied based on her disabilities. The reasons given in her denial

were Invitee A's anxiety and insomnia, and speculative concerns that her medication regimen might exacerbate these conditions.

101.    The Peace Corps did not engage in any further interactive process with Invitee A or contact her treating providers, who were in the best position to evaluate her ability to serve abroad.

102.    Invitee A timely filed her appeal on March 11, 2023, within the 30-day window. Her appeal included a personal statement explaining, among other things, that she has not experienced any episodes of anxiety or panic in the ten years she has been on her current medication regimen, despite working in high-stress environments throughout that time.

103.    On or about March 29, 2023, the Peace Corps notified Invitee A that her appeal had been denied for the same disability-based reasons as her original denial and that her candidacy for the Peace Corps Volunteer position was being terminated.

104.    Invitee A requested no accommodation from the Peace Corps that would have imposed any burden – let alone an undue burden – on the agency. The Peace Corps did not ask Invitee A about reasonable accommodations prior to denying her the opportunity to serve based on disability.

105.    The Peace Corps' decision was not supported by an individualized assessment based on reasonable judgment that relies on current medical knowledge and on the best available objective evidence, including the resources available at or near the specific location where Invitee A was to serve, or the job duties of Invitee A's offered position.

106.    The Peace Corps did not offer any alternative assignments as an accommodation.

107.    Rather, the Peace Corps improperly denied Invitee A opportunities based upon her disabilities, record of disabilities, and/or perceived disabilities.

ii.      *Invitee B*

108.    Another Invitee, Invitee B, was selected for a Peace Corps Volunteer position in Mongolia, on or about September 29, 2022.

109.    Invitee B has a disability, perceived disability, and/or record of disability, based upon which the Peace Corps denied her placement abroad as a Volunteer. Specifically, at all times relevant to this Complaint, Invitee B had Major Depressive Disorder, Generalized Anxiety Disorder, Post-Traumatic Stress Disorder, and Panic Disorder, for which she was taking prescription medications.

110.    At all times relevant to this Complaint, Invitee B was a qualified individual with a disability under the Rehabilitation Act. Invitee B was qualified for the position for which she had been selected and could perform all essential functions of the position with or without reasonable accommodations.

111.    Following Invitee B's selection, the Peace Corps required her to answer questions about her mental health. She also submitted a joint letter from her treating mental health providers. The letters indicated that Invitee B's medical providers had no concerns regarding her mental health or her ability to perform the functions of a Peace Corps Volunteer.

112.    On or about November 30, 2022, without a legally compliant individualized assessment or  consideration of reasonable accommodations, the Peace Corps Medical Office notified Invitee B that her medical clearance was denied based on disability. The reasons given in her denial were Invitee B's current mental health disability diagnoses, infrequent and well-managed symptoms of these diagnoses, and unsupported speculations that her medication could have negative side effects.

113.    The Peace Corps did not engage in any further interactive process with Invitee B or contact her treating providers, who were in the best position to evaluate her ability to serve abroad.

114.    Invitee B timely filed her appeal on January 7, 2023, within the extended window due to the holidays. Her appeal included an updated note from her medical provider, two character

references from current coworkers, and a personal statement. Invitee B's treating providers explained again that Invitee B's mental health was stable and corrected false assumptions and inaccuracies asserted by the Peace Corps regarding her mental health history and current medications.

115.    On or about February 1, 2023, the Peace Corps notified Invitee B that her appeal had been denied for the same disability-based reasons as the original denial and that her candidacy for the Peace Corps Volunteer position was being terminated.

116.    Invitee B requested no accommodation from the Peace Corps that would have imposed any burden – let alone an undue burden – on the agency. The Peace Corps did not ask Invitee B about reasonable accommodations prior to denying her the opportunity to serve based on disability.

117.    The Peace Corps' decision was not supported by an individualized assessment based on reasonable judgment that relies on current medical knowledge and on the best available objective evidence, including resources available at or near the specific location where Invitee B was to serve, or the job duties of Invitee B's offered position.

118.    The Peace Corps did not offer any alternative assignments as an accommodation.

119.    Rather, the Peace Corps improperly denied Invitee B opportunities based upon her disability, record of disability, and/or perceived disability.

  iii.    _Invitee C_

120.    Another Invitee, Invitee C, was selected for a Peace Corps Volunteer position in Rwanda, on or about October 26, 2022.

121.    Invitee C has a disability, perceived disability, and/or record of disability, based upon which the Peace Corps denied her placement abroad as a Volunteer. Specifically, at all times relevant to this Complaint, Invitee C had Major Depressive Disorder and Attention Deficit Hyperactive Disorder, for which she was taking prescription medications.

122.    At all times relevant to this Complaint, Invitee C was a qualified individual with a disability under the Rehabilitation Act. Invitee C was qualified for the position for which she had been selected and could have performed all essential functions of the position with or without reasonable accommodations.

123.    Following Invitee C's selection, the Peace Corps required her to submit two mental health evaluations, which she did in November 2022. Both evaluations, performed by different medical providers, noted that Invitee C was stable and presented no concerns. She was also asked to submit personal statements answering questions about her health, which she provided promptly.

124.    On or about January 24, 2023, without a legally compliant individualized assessment or consideration of reasonable accommodations, the Peace Corps Medical Office notified Invitee C that her medical clearance was denied based on disability. Contrary to her medical providers' opinions, the reasons given in her denial were concerns regarding the prescribed dosage of her medication and speculation about rare side effects of this medication.

125.    The Peace Corps did not engage in any further interactive process with Invitee C or contact her treating providers, who were in the best position to evaluate her ability to serve abroad.

126.    Invitee C timely appealed, including a personal statement clarifying that she has experienced no side effects from her medications in the over two years since she began treatment.

127.    On or about March 15, 2023, the Peace Corps notified Invitee C that her appeal had been denied for the same disability-based reasons as the original denial and that her candidacy for the Peace Corps Volunteer position was being terminated.

128.    Invitee C requested no accommodation from the Peace Corps that would have imposed any burden – let alone an undue burden – on the agency. The Peace Corps did not ask Invitee C about reasonable accommodations prior to denying her the opportunity to serve based on disability.

129.    The Peace Corps' decision was not supported by an individualized assessment based on reasonable judgment that relies on current medical knowledge and on the best available

objective evidence, including the resources available at or near the specific location where Invitee C was to serve, or the job duties of Invitee C's offered position.

130.    The Peace Corps did not offer any alternative assignments as an accommodation.

131.    Rather, the Peace Corps improperly denied Invitee C opportunities based upon her disability, record of disability, and/or perceived disability.

iv.    *Invitee D*

132.    On or about January 18, 2023, another Invitee, Invitee D, was selected for a Peace Corps Volunteer position in Mexico.

133.    Invitee D has a disability, perceived disability, and/or record of disability, based upon which the Peace Corps denied her placement abroad as a Volunteer. Specifically, at all times related to this Complaint, Invitee D had Generalized Anxiety Disorder and Major Depressive Disorder, mild, for which she was taking prescription medication and attending therapy.

134.    At all times relevant to this Complaint, Invitee D was a qualified individual with a disability under the Rehabilitation Act. Invitee D was qualified for the position for which she had been selected and could perform all essential functions of the position with or without reasonable accommodations.

135.    Following Invitee D's selection, the Peace Corps required her to submit a mental health evaluation. The evaluation, performed by her therapist, indicated no concerns about Invitee D's mental health or her ability to perform the functions of a Peace Corps Volunteer. Invitee D was also asked to submit personal statements answering questions about her health, which she provided promptly.

136.    On or about March 1, 2023, without a legally compliant individualized assessment or consideration of reasonable accommodations, the Peace Corps Medical Office notified Invitee D that her medical clearance was denied based on disability. The reason given in her denial was her mental health diagnoses and speculative concerns, contrary to her medical provider's opinion, about symptoms of these diagnoses.

137.     The Peace Corps did not engage in any further interactive process with Invitee D or contact her treating provider, who was in the best position to evaluate her ability to serve abroad.

138.     Invitee D timely filed her appeal on or around March 31, 2023. Her appeal included a personal statement in which she explained again that her mental health was stable and corrected false assumptions and inaccuracies asserted by the Peace Corps regarding her mental health history, current symptoms, and ability to adapt to a new environment.

139.     On or about April 5, 2023, only five days after she submitted her appeal, the Peace Corps notified Invitee D that her appeal had been denied for the same disability-based reasons as the original denial and that her candidacy for the Peace Corps Volunteer position was being terminated.

140.     Invitee D requested no accommodation from the Peace Corps that would have imposed any burden – let alone an undue burden – on the agency. The Peace Corps did not ask Invitee D about reasonable accommodations prior to denying her the opportunity to serve based on disability.

141.     The Peace Corps' decision was not supported by an individualized assessment based on reasonable judgment that relies on current medical knowledge and on the best available objective evidence, including resources available at or near the specific location where Invitee D was to serve, or the job duties of Invitee D's offered position.

142.     The Peace Corps did not offer any alternative assignments as an accommodation.

143.     Rather, the Peace Corps improperly denied Invitee D opportunities based upon her disability, record of disability, and/or perceived disability.

v.     _Invitee E_

144.     The Peace Corps' discriminatory policies and practices have been in effect for many years. For example, in February 2020, Invitee E, was selected for a Peace Corps Volunteer position in North Macedonia.

145.    Invitee E has a disability, perceived disability, and/or record of disability, based upon which the Peace Corps denied her placement abroad as a Volunteer. Specifically, at all times relevant to this Complaint, Invitee E had Major Depressive Disorder and General Anxiety Disorder, for which she was taking prescription medications.

146.    At all times relevant to this Complaint, Invitee E was a qualified individual with a disability under the Rehabilitation Act. Invitee E was qualified for the position for which she had been selected and could have performed all essential functions of the position with or without reasonable accommodations.

147.    On February 20, 2020, following Invitee E's selection,  the Peace Corps requested medical information from her, which she provided.

148.    On February 25, 2020, without a legally compliant individualized assessment or consideration of reasonable accommodations, the Peace Corps Medical Office notified Invitee E that her medical clearance was denied based on disability. The reason given in her denial was that Invitee E recently had a change in medications, had medication which could not be supported in service, and that she was currently engaged in treatment for her disabilities. The denial also stated, without basis in fact and contrary to the opinion of Invitee E and her doctor: "It is likely, to a reasonable degree of medical certainty, the potentially stressful environment of Peace Corps would aggravate, exacerbate, accelerate, or permanently worsen your pre-existing medical concerns, which would lead to your being unable to complete a tour of 27 months without unreasonable disruption of service."

149.    On February 27, 2020, Invitee E wrote an email to the Peace Corps Medical Office in response to her medical non-clearance, explaining that her disabilities and her medications would not inhibit her ability to serve in North Macedonia, where she was set to move. She explained that her health care providers offered to continue treating her remotely and that she had located private pharmacies and delivery services in Skopje, near the Peace Corps Headquarters in North Macedonia, that would allow her to receive her medications. Additionally, Invitee E described her experience successfully spending extensive time in Syria, Lebanon, and Peru under

austere conditions, despite her disabilities.

150.     On February 28, 2020, the Medical Office notified Invitee E of her right to appeal their decision to deny her medical clearance. Invitee E timely submitted an appeal on March 28, 2020, within the 30-day window. Invite E's appeal included a personal statement describing her ability to serve abroad and reiterating her successful experience abroad with her disabilities and her treatment regimen, which she could continue in North Macedonia. Invitee E again presented the Peace Corps with information on private pharmacies near the Peace Corps Headquarters in North Macedonia, including delivery services, which would allow her to obtain her prescriptions.

151.     On April 18, 2020, Invitee E informed the Medical Office that she was completing her treatment and that she planned to discontinue her medication with her providers' approval.

152.     On August 5, 2020, the Peace Corps notified Invitee E that her appeal had been denied for the same disability-based reasons as her original denial and that her candidacy for the Peace Corps Volunteer position was being terminated.

153.     The Peace Corps did not engage in any further interactive process with Invitee E or contact Invitee E's treating providers, who were in the best position to evaluate her ability to serve abroad.

154.     Invitee E requested no accommodation of the Peace Corps that would have imposed any burden – let alone an undue burden – on the agency. The Peace Corps did not ask Invitee E about reasonable accommodations prior to denying her the opportunity to serve based on disability.

155.     The Peace Corps' decision was not supported by an individualized assessment based on reasonable judgment that relies on current medical knowledge and on the best available objective evidence, including the resources available at or near the specific location where Invitee E was supposed to serve, or the job duties of Invitee E's offered position.

156.     The Peace Corps did not offer any alternative assignments as an accommodation.

157.     Rather, the Peace Corps improperly denied Invitee E opportunities based upon her disability, record of disability, and/or perceived disability.

    *vi.*     *Invitee F*

158.     On or about March 2021, Invitee F applied for a Peace Corps Volunteer position.

159.   On or about July 18, 2022, Invitee F received a formal invitation to serve in the Peace Corps as a Volunteer in Costa Rica.

160.   Following her selection, on or about November 5, 2022, Invitee F was required to undergo a mental health evaluation as part of the medical clearance process. The mental health professional who evaluated Invitee F stated that she was capable of serving in Costa Rica.

161.   On or about November 10, 2022, without a legally compliant individualized assessment or consideration of reasonable accommodations, the Medical Office notified Invitee F that her medical clearance was denied based on her actual or perceived mental health disability and/or record of a mental health disability. The reason given in her denial was an old diagnosis of Major Depressive Disorder, other mental health symptoms, and inaccurate, unfounded speculation about these.

162.   In addition to ignoring the advice of Invitee F's mental health evaluator and her own assessment of her capabilities, the Peace Corps did not engage in any further interactive process with Invitee F or consider objective facts that she provided.

163.   Invitee F requested an appeal the following day, on November 11, 2022, via email. Invitee F timely filed a written appeal on December 7, 2022, within the 30-day window. Her appeal included a personal statement explaining, among other things, that her symptoms of depression are mild, sporadic, and easily manageable, and that because of this, her evaluating mental health professional stated she no longer met the diagnostic criteria for Major Depressive Disorder.

164.   A week after her appeal, on about December 14, 2022, the Peace Corps notified Invitee F that her appeal had been denied for the same disability-based reasons as her original denial and that her candidacy for the Peace Corps Volunteer position was being terminated.

165.   Invitee F requested no accommodation from the Peace Corps that would have imposed any burden – let alone an undue burden – on the agency. The Peace Corps did not ask Invitee F about any need for reasonable accommodations or offer any reasonable accommodations prior to denying her the opportunity to serve based on disability.

166.    The Peace Corps' decision was not supported by an individualized assessment based on reasonable judgment that relies on current medical knowledge and on the best available objective evidence, including the resources available at or near the specific location where Invitee F was to serve, or the job duties of Invitee F's offered position.

167.    The Peace Corps did not offer any alternative assignments as an accommodation.

168.    Rather, the Peace Corps improperly denied Invitee F opportunities based upon her disability, record of disability, and/or perceived disability.

## VII.   EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TOLLING

169.    Each of the named Plaintiffs exhausted available administrative remedies before filing this Complaint.

170.    On December 21, 2022, Plaintiff John Doe A, following appeal of the denial of his medical clearance, received notice that his candidacy for the Peace Corps position was being terminated based upon this denial. On December 7, 2022, he timely filed an informal complaint with Peace Corps EEO regarding his initial denial of medical clearance in November 2022, which he supplemented on January 11, 2023, regarding his final denial in December 2022, alleging individual and class claims of disability discrimination.

171.    On February 16, 2023, Plaintiff John Doe A timely filed a formal complaint with Peace Corps EEO, alleging individual and class claims of disability discrimination.

172.    More than 180 days have elapsed since Plaintiff John Doe A filed his formal complaint, including individual and class allegations, with Peace Corps EEO, and no final agency action has been taken with respect to his administrative complaint alleging violations of the Rehabilitation Act. No external appeal has been filed with respect to Plaintiff John Doe A's administrative complaint alleging violations of the Rehabilitation Act against Defendant.

173.    Accordingly, Plaintiff John Doe A has timely exhausted his administrative remedies with respect to his claims under the Rehabilitation Act.

174.    On February 8, 2023, following appeal of the denial of his medical clearance, Plaintiff John Doe B received notice that his candidacy for the Peace Corps position was being terminated based upon this denial. On December 5, 2022, he timely filed an informal complaint with Peace Corps EEO regarding his initial denial of medical clearance in November 2022.

175.    On February 8, 2023, following filing the informal EEO complaint and appeal of his initial medical clearance denial, Plaintiff John Doe B received notice that his candidacy for the Peace Corps position was being terminated. On February 16, 2023, he timely filed a formal complaint with Peace Corps EEO, alleging individual and class claims of disability discrimination.

176.    More than 180 days have elapsed since Plaintiff John Doe B filed his formal complaint, including individual and class allegations, with Peace Corps EEO, and no final agency action has been taken with respect to his administrative complaint alleging violations of the Rehabilitation Act. No external appeal has been filed with respect to Plaintiff John Doe B's administrative complaint alleging violations of the Rehabilitation Act against Defendant.

177.    Accordingly, Plaintiff John Doe B has timely exhausted his administrative remedies with respect to his claims under the Rehabilitation Act.

178.    On October 5, 2022, following appeal of the denial of his medical clearance, Plaintiff John Doe C received notice that his candidacy for the Peace Corps position was being terminated based upon this denial. On November 2, 2022, he timely filed an informal complaint with Peace Corps' EEO,[5] alleging individual and class claims of disability discrimination.

179.    On February 14, 2023, he timely filed a formal complaint with Peace Corps EEO, alleging individual and class claims of disability discrimination.

180.    More than 180 days have elapsed since Plaintiff John Doe C filed his formal complaint, including individual and class allegations, with Peace Corps EEO and no final agency action has been taken with respect to his administrative complaint alleging violations of the

_____

5. Throughout, "Peace Corps EEO" refers both to the Peace Corps and the Peace Corps Office of Civil Rights and Diversity.

Rehabilitation Act. No external appeal has been filed with respect to Plaintiff John Doe C's administrative complaint alleging violations of the Rehabilitation Act against Defendant.

181.    Accordingly, Plaintiff John Doe C has timely exhausted his administrative remedies with respect to his claims under the Rehabilitation Act .

182.    In 2021, the Peace Corps amended its regulations and eliminated class complaints against itself at the administrative level.[6] Plaintiffs thus were prevented from addressing this systemic violation of their rights under Section 504 at the administrative level. Their only option is to file a class complaint in federal district court.

## FIRST CLAIM FOR RELIEF

## Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a)

## Disability Discrimination

183.    Plaintiffs, on behalf of themselves and the proposed Class, allege and incorporate by reference the allegations in the preceding paragraphs.

184.    The Peace Corps is an independent agency within the executive branch of the United States government and is federally funded. 22 U.S.C. § 2501-1. Accordingly, the Peace Corps is subject to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) ("Section 504"), and the federal regulations promulgated thereunder. 28 C.F.R. § 41.[7]

185.    Section 504 prohibits, *inter alia*, Executive Agencies and recipients of federal funding from discriminating against any qualified individual with a disability, excluding them

---

6.  *See* 22 C.F.R. § 306.

7. *See supra* note 2. Pursuant to congressional directive, the U.S. Department of Health and Human Services has promulgated regulations implementing Section 504 that are also instructive here. *See* 45 C.F.R. § 84.4.  Under these regulations, covered entities may not directly, contractually, or through other arrangements deny a qualified individual with a disability the opportunity to participate in or benefit from an aid, benefit, or service, or provide unequal opportunities. They also may not limit a person with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others. *See id.* at § 84.4(b)(1)(i)-(ii), (vii).  Covered entities may not utilize criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability, or that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the entity's program with respect to individuals with disabilities. *See id.* at. § 84.4(b)(4)(i), (ii).

from participation in, or denying them the benefits of any program or activity receiving federal funding or conducted by the Executive Agency, because of disability.  29 U.S.C. § 794(a).

186.    In addition to these prohibitions, covered entities must take certain steps to avoid discrimination on the basis of disability. In particular, covered entities are required to provide reasonable accommodations when necessary to avoid discrimination on the basis of disability, unless the entity can demonstrate that the modifications would fundamentally alter the nature of the program or activity.[8]

187.    For years, the Peace Corps has violated Section 504 of the Rehabilitation Act with respect to Invitees with actual disabilities, perceived disabilities, and records of disabilities, including, but not limited to, by maintaining a pattern, practice, and/or policy of:

    a.   denying equal access to and benefits of the Peace Corps' Volunteer program to Invitees with actual disabilities, perceived disabilities, and records of disabilities based on disability;

    b.   failing to conduct legally compliant individualized assessments based on reasonable judgment that relies on current medical knowledge and on the best available objective evidence;

    c.   denying Invitees with actual disabilities, perceived disabilities, and records of disabilities opportunities to participate in and benefit from its Volunteer program based on mere speculation, assumptions, and/or generalizations about their disabilities, symptoms, and treatment; and

    d.   failing to consider or provide reasonable accommodations before denying positions to Invitees based on disability.

---

8. *See, e.g.*, Section 504 Enforcement Information, U.S. Department of Health and Human Services, https://www.hhs.gov/civil-rights/for-individuals/disability/index.html (last viewed Sept. 20, 2023) ("Covered entities must…[m]ake reasonable modifications in their policies, practices, and procedures to avoid discrimination on the basis of disability, unless it would result in a fundamental alteration of the program.").

188.     Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794(a), Plaintiffs pray for judgment as set forth below.

## **PRAYER FOR RELIEF**

189.     Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794(a), Plaintiffs and the putative class pray for judgment as set forth below.

190.      WHEREFORE, Plaintiffs pray for relief as follows:

A.     Declaratory relief that the Peace Corps' methods of administering medical clearances violates the Rehabilitation Act;

B.     Injunctive relief to ensure Peace Corps' compliance with the Rehabilitation Act in administering medical clearances, to the extent medical clearances are necessary at all, including policy changes and staff training;

C.     An opportunity for Plaintiffs and class members to have their offers reinstated and/or medical clearances reconsidered based on a nondiscriminatory evaluation of their current health;

D.     Attorneys' fees and legal costs; and

E.     For such other and further relief, in law or equity, as this Court may deem appropriate and just.

By:     /s/ *Bryan Schwartz*                              DATED:  September 26, 2023

BRYAN SCHWARTZ LAW, P.C.
Bryan Schwartz (DC Bar No. 482960)
180 Grand Avenue, Suite 1380
Oakland, California 94612
Tel. (510) 444-9300
Fax (510) 444-9301
Email: bryan@bryanschwartzlaw.com


BAZELON CENTER FOR MENTAL HEALTH LAW
Megan E. Schuller (CA Bar No. 281468) (Application for DC Bar Admission and Admission Pro Hac Vice pending)
Ira Burnim (DC Bar No. 406154)

Anashua Dutta (DC Bar No. 90007329)
1090 Vermont Avenue NW, Suite 220
Washington, DC 20005
Tel: (202) 467-5730
Email: megans@bazelon.org
          irab@bazelon.org
          anashuad@bazelon.org


*Attorneys for Individual and Representative
Plaintiffs and the Putative Class*